602 P.2d 486

**In the Matter of a Member of the State Bar of Arizona Harold GOLDMAN, Respondent.**

**No. SB–164.**

Supreme Court of Arizona, In Banc.

Nov. 2, 1979.

Stephen E. Silver, Phoenix, State Bar Counsel.

Goldstein, Flynn & Mason, by Philip T. Goldstein, Thomas C. Mason, Phoenix, for respondent.

STRUCKMEYER, Vice Chief Justice.

This matter arises out of the recommendation of the Disciplinary Board of the State Bar of Arizona in a disciplinary proceeding against respondent, Harold Goldman.

The members of Local Administrative Committee 5–K heard evidence, made findings of fact and concluded that respondent engaged in unprofessional and unethical conduct in violation of the Code of Professional Responsibility, in particular Disciplinary Rule 1–102(A)(3) and (4). The Local Administrative Committee recommended that respondent be suspended from the practice of law for the period of 90 days. Thereafter the record was reviewed by the Disciplinary Board. The Board accepted the findings of fact and conclusions of law of the Local Administrative Committee, but rejected the Committee's recommendation of a 90-day suspension from the practice of law. It recommended that respondent be disbarred. Respondent objected to the recommendation of the Disciplinary Board and, pursuant to Rule 36, Rules of the Arizona Supreme Court, 17A A.R.S., the matter was submitted to this Court for resolution after oral arguments on September 7, 1979.

After considering the facts, which are not in conflict, we have concluded that respondent should be disbarred.

Respondent was admitted to the practice of law in 1958, and since that time has practiced law in Phoenix, Arizona. Some time about the year 1962, respondent caused the Valley Enterprises, Inc. to be incorporated with respondent as President. Originally Valley Enterprises had twenty incorporators, each of whom owned five percent of the stock. Over the course of years, respondent became the owner of 19.7% of the stock through acquisition of the shares of some of the incorporators. Thereafter Valley Enterprises entered into real estate developments. The business arrangement by which property was developed was that Valley Enterprises became a general partner and friends and associates of respondent became limited partners who contributed additional capital. By A.R.S. § 29–301, a limited partnership is defined as a partnership formed by two or more persons having as members one or more general partners and one or more limited partners. The limited partners are not bound by the obligations of the partnership beyond the value of their capital investments.

At the time of the matters herein related, Valley Enterprises was a general partner in five limited partnerships. Two of these were known as the Tampico Apartments and the Monterrey Apartments. Tampico Apartments was a complex comprising eighty units, and the Monterrey Apartments a complex comprising one hundred units. In both instances the limited partners contributed some of the funds for development of the apartment complexes. Interim financing was obtained from the Valley National Bank and permanent mortgage commitments were obtained from the General American Life Insurance Company. Respondent undertook to manage the projects and oversee their development. In the Tampico Apartments, Valley Enterprises made a $15,000 contribution to capital and respondent individually made a similar contribution. Respondent's personal capital contribution to the Monterrey Apartment complex was $18,000.

In October of 1973, payments on unsecured borrowings of Valley Enterprises from the Valley National Bank and other lending institutions were current and not in default. However, the picture changed. Following the oil embargo of October 3, 1973, interest rates skyrocketed and funding for business ventures was not readily available. Rental income dropped as unemployment rose. By March, 1974, Valley Enterprises was indebted to the Valley National Bank on an unsecured basis in excess of $100,000 with respondent and his wife as guarantors of its obligations. The Valley National Bank called upon respondent to secure the indebtedness.

Valley Enterprises had in its name a time certificate of deposit for $105,000, representing $65,000 of money belonging to the Tampico partnership and $40,000 belonging to the Monterrey partnership. These funds had previously been combined by Valley Enterprises to obtain the higher rate of interest available for deposits of $100,000 or over.

The Local Administrative Committee found the following undisputed facts:

"(1) That on or about March 26, 1974, the Respondent, as President of Valley Enterprises, Inc., delivered to the Valley National Bank collateral to secure indebtedness of Valley Enterprises, Inc., in the form of a time certificate of deposit in the name of Valley Enterprises, Inc., in the amount of $105,000.00.

(2) That the Respondent knew at the time he delivered the time certificate of deposit to the Valley National Bank that the funds represented by the certificate were not the property of Valley Enterprises, Inc., but in fact were the property of two limited partnerships known as Tampico Apartments and Monterrey Apartments, in which Valley Enterprises, Inc. was the general partner.

(3) In May of 1974, the Valley National Bank questioned the Respondent concerning the ownership of the time certificate of deposit, and was advised by the Respondent that the funds evidenced by the certificate of deposit were the property of two limited partnerships in which Valley Enterprises, Inc. was the general partner. The Respondent further advised the bank that there were proper partnership agreements which permitted the general partner to pledge assets of the limited partnerships to secure said loan.

(4) That on or about June 3, 1974, the Respondent submitted to the bank two documents purporting to be signed by the limited partners of Tampico Apartments and Monterrey Apartments, giving Valley Enterprises, Inc. authority to use their funds as collateral for the loan.

(5) That the documents given to the bank by the Respondent were in fact false and had been altered by the Respondent in such a manner so as to make them appear as though such authority had been given when in fact the documents executed by the limited partners did not give such authority.

(6) That the limited partners of Tampico Apartments and Monterrey Apartments had not given any authority to the Respondent to use funds belonging to the limited partnerships to secure indebtedness of the general partner Valley Enterprises, Inc., and the limited partners had no knowledge that the Respondent was in fact using limited partnership funds for that purpose.

(7) That the Respondent thereafter on two occasions had the certificate of deposit on its expiration date renewed and again pledged as collateral for the Valley Enterprises, Inc. indebtedness.

(8) That the submission of the false documents to the bank's representatives and the oral misrepresentations by the Respondent to the bank of Valley Enterprises, Inc.'s authority to use limited partnership funds belonging to Tampico and Monterrey was a conscious and deliberate deceit and misrepresentation on the part of the Respondent. * * * "

The evidence relative to Findings 3 and 4 establish that an official of the Valley National Bank, in reviewing Valley Enterprises' financial statement in May, 1974, questioned respondent by telephone as to how Valley Enterprises could have pledged a $105,000 time certificate of deposit when this asset did not appear on Valley Enterprises' balance sheet. At that time respondent advised the bank official that the monies in question belonged to the limited partnerships, but that Valley Enterprises had the authority to use the time certificate of deposit.

The evidence relative to Findings 5 and 6 show that respondent obtained the signatures of the limited partners to certain documents labeled "Second Amendment to Limited Partnership Agreement." Respondent then reproduced the documents and inserted additional unauthorized language

in what is described as "a cut and paste job." A portion of the unauthorized language material to respondent's conduct recites:

"Said time certificates of deposit, * * may be pledged or encumbered for either the debts of the Partnership, or of the General Partner in connection with the ordinary business of the Partnership or the General Partner."

Respondent then mailed the documents containing the unauthorized language to the Valley National Bank.

In early June, at a meeting with a Valley National Bank representative, respondent told the Valley National Bank representative that Valley Enterprises had authority to use limited partnership funds.

■ The foregoing undisputed facts show that respondent's conduct was felonious in four particulars:

1. By A.R.S. § 13–1802.A.2 (formerly A.R.S. § 13–682), theft by embezzlement.
2. By 18 U.S.C. § 1341, mail fraud.
3. By 18 U.S.C. § 1343, wire fraud.
4. By 18 U.S.C. § 1014, false oral and written statements to a bank.

Disciplinary Rule 1–102(A)(3) and (4) provides:

"(A) A lawyer shall not:

*    *    *    *    *    *

(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct, involving dishonesty, fraud, deceit, or misrepresentation.

*    *    *"

Moreover, while respondent has not been convicted of a felony, by Supreme Court Rule 29(c) it is mandatory that:

"A member shall be disbarred upon conviction of any felony."

A felony conviction is simply conclusive evidence of facts which establish the lack of satisfactory character to practice law. Proof of facts which would support a felony conviction warrants a similar result.

Respondent argues in favor of suspension that the primary purpose of disciplinary proceedings is not to punish the attorney, but for the protection of the public. We do not question this statement of the purpose of disciplinary proceedings. But the record is uncontradicted that respondent has used monies entrusted to his care for his personal benefit. He argues that he acted to protect the interest of the limited partners in the two financially troubled partnerships, Mesa Apartment Associates and Olive Grove. Certainly respondent was not protecting the limited partners of Tampico and Monterrey, whose funds he converted. The fact is, respondent would have personally suffered heavy financial losses if Valley Enterprises and the two projects, Mesa Apartment Associates and Olive Grove, had been forced into bankruptcy. Respondent, as the personal guarantor of the loans to Valley Enterprises and Olive Grove and Mesa Apartment Associates, faced a financial disaster which would have resulted, as he said, in his financial demise.

■ It is ordered that respondent be disbarred, and that he be assessed costs in the amount of $1,788.33.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.