## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* GERALD NEY KLAUBER

[Misc. Docket (Subtitle BV) No. 4, September Term, 1978.]

*Decided October 10, 1978.*

The cause was argued before SMITH, DIGGES, ▌LEVINE, ELDRIDGE, ORTH and COLE, JJ., and RICHARD P. GILBERT, Chief Judge of the Court of Special Appeals, specially assigned.

*Michael E. Marr* for respondent.

*James A. Frost, Assistant Bar Counsel,* for petitioner.

SMITH, J., delivered the opinion of the Court. GILBERT, J., filed an opinion concurring in the result at page 600 *infra.* ORTH, J., filed a dissenting opinion at page 603 *infra.*

Bar Counsel acting on behalf of the Attorney Grievance Commission of Maryland filed a petition on June 28, 1978 seeking suspension of Respondent, Gerald Ney Klauber, under Maryland Rule BV16 as then in effect. This suspension was sought by virtue of the final judgment entered in the United States District Court for the District of Maryland on June 22, 1978 convicting Klauber of violating 18 U.S.C.

§ 1341, mail fraud, and 18 U.S.C. § 1962, racketeering. He has appealed this conviction.

Rule BV16 as it then existed provided that we might suspend an attorney, pending our further order, who was convicted of a crime involving moral turpitude, with further provision as to the procedure to be followed upon the completion of any appeals the attorney might have filed. In *Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 379 A. 2d 171 (1977), Chief Judge Murphy said for the Court:

> "We need not decide in this case whether a conviction for mail fraud, in any and all circumstances, will always involve moral turpitude. It is enough that we determine in this case, from a review of the allegations of the indictment and the District Court's charge to the jury, and the jury's verdict, that the crimes of which Reamer was convicted plainly involved moral turpitude." *Id.* at 328.

In that case the jury instructions made it abundantly clear that to convict the jury must find that acts were committed with an actual intent to defraud. We said:

> "The jury's finding of guilt of mail fraud and aiding and abetting in a mail fraud under these instructions, in light of the allegations of the indictment that he procured false and fraudulent medical reports and bills, clearly indicates that Reamer's convictions involved moral turpitude within the contemplation of Rule BV16." *Id.* at 329-30.

The instruction to the jury in this case apparently did not limit a conviction to a finding of moral turpitude as in *Reamer.* The jury was told:

> "The Government has introduced evidence which it claims shows that the defendant paid individuals known as runners and MTA bus drivers moneys in exchange for those individuals referring to him clients who had been injured in automobile and bus

accidents. The use of such individuals is relevant in this case if you find that the procurement of clients by such persons was part of the scheme as alleged in the indictment.

"The law of the State of Maryland prohibits an attorney from compensating or agreeing to compensate another person for procuring clients. Furthermore, the Code of Professional Responsibility which applies to attorneys practicing in the State of Maryland provides in part as follows:

> 'A lawyer should not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client. Likewise, a lawyer shall not accept employment when he knows or it is obvious that the person who seeks his service does so as a result of conduct described herein.'

"If you should find that as a part of a scheme to defraud, the defendant paid certain individuals for the purpose of procuring as clients persons who had been involved in automobile and bus accidents, and if you should further find that the defendant knew or should have known that such payments were violations of Maryland law or violations of the Code of Professional Responsibility applicable to Maryland lawyers, then you may consider such violation as evidence of the intent with which the defendant acted in this case."

It may follow from this instruction that the jury *could* have found Klauber guilty without finding an intent on his part to defraud. His appeal is still pending. Hence we cannot say at this point in time, particularly before the Fourth Circuit speaks, that Klauber necessarily stands convicted of a crime involving moral turpitude.

It must be borne in mind that Rule BV16 does not make suspension mandatory, but makes it discretionary in this

600

Court pending resolution of an appeal. In such a proceeding we do not have a full record before us. There has been no testimony adduced under Rule BV10, and hence no finding of fact under Rule BV11, as to whether moral turpitude was involved. Since suspension under Rule BV16, as it was then worded, could occur only upon conviction of a crime involving moral turpitude and, under the same rule, we were dealing with suspension as a *preliminary* matter, without a full record, we held as we did in *Reamer* because our *preliminary* determination awaited *final* resolution of the moral turpitude issue upon appellate review of the conviction. It was our intention in *Reamer* under the rule as it then existed to make plain that we would not — and should not — suspend unless it was absolutely clear that the crime involved moral turpitude. In *Reamer* we came to recognize the difficulties inherent in this rule involving moral turpitude. It was for that reason that on May 5, 1978, effective July 1, 1978, we amended Rule BV16 to permit suspension of an attorney upon conviction of certain crimes which include a conviction "in any federal court of a felony, unless the same crime also is a crime under Maryland law and is not a felony . . . ."

The petition is denied. In denying the petition in this instance we do not pass upon whether Klauber would be subject to suspension upon the timely filing of a petition under the revised Rule BV16 since the matter is not before us.

*It is so ordered.*

*Gilbert, J., concurring* :

If we were writing on a clean slate, I would have no hesitancy in joining in part in Judge Orth's dissent. As it is, however, I believe we are bound by this Court's recent decision in *Attorney Grievance Commission v. Reamer,* 281 Md. 323, 328 (1977), wherein a unanimous Court said, "We need not decide in this case whether a conviction for mail fraud, in any and all circumstances, will always involve moral turpitude. It is enough that we determine in this case, from a review of the allegations of the indictment *and the District Court's charge to the jury,* and the jury's verdict that the

crimes of which Reamer was convicted plainly involved moral turpitude." (Emphasis supplied.)

I know of no other way to interpret that language than to construe it to mean exactly what the majority says it means. We are, therefore, in the instant case, bound to look to the jury charge as given by the Judge of the United States District Court for the District of Maryland to the Klauber trial jury:

> "The law of the State of Maryland prohibits an attorney from compensating or agreeing to compensate another person for procuring clients. Furthermore, the Code of Professional Responsibility which applies to attorneys practicing in the State of Maryland provides in part as follows:
>
>> 'A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client. Likewise, a lawyer shall not accept employment when he knows or it is obvious that the person who seeks his service does so as a result of conduct described herein.'
>
> "If you *should find that as a part of a scheme to defraud, the defendant paid certain individuals for the purpose of procuring as clients persons who had been involved in automobile and bus accidents, and if you should further find that the defendant knew or should have known that such payments were violations of Maryland law or violations of the Code of Professional Responsibility applicable to Maryland lawyers, then you may consider such violation as evidence of the intent with which the defendant acted in this case.* However, as I have previously informed you, the defendant is not on trial in this case for any act or conduct not alleged

in one of the counts of this indictment." (Emphasis supplied.)

Plainly, the hiring of "runners," while a clear violation of the Canons of Professional Responsibility, Md. Rule 1230, is not a crime involving moral turpitude. Under that charge, if the jury believed the government's case was weak, they may well have considered the employment of "runners" as evidence of fraudulent intent and thereby bootstrapped the government's case to a strength it otherwise would not possess. Of course, I do not know that this is what happened, but as the majority makes clear, it *could* have happened, and that is enough to preclude a finding that "the crimes of which ... [Klauber] was convicted plainly involved moral turpitude." *Attorney Grievance Commission v. Reamer,* 281 Md. at 328.

I cannot, with any degree of reasonable certainty, state that the portion of the District Court judge's charge dealing with the "runners" had no effect on the jury's verdict.

As I have earlier indicated, this is the conclusion to which I am propelled by *Reamer.* My basic quarrel is not with the majority's reasoning in this case but with *Reamer,* which I would overrule, because in it I think the Court articulated a rule that it was absolutely unnecessary to promulgate, and in which it now finds itself enmeshed. Reamer was convicted of mail fraud, and whether that offense constituted moral turpitude should not have been the deciding factor. *Reamer* should not have contained the phrase "and the District Court's charge to the jury." This Court should only look to the allegations of the indictment and the verdict of the jury thereon. We should not be in the position of evaluating the District Court Judge's jury charge. That task the Congress wisely placed in the hands of the Fourth Circuit Court of Appeals. We should have left it there.

The Courts regulate the practice of law, *Public Service Comm'n v. Hahn, Inc.,* 253 Md. 571, 253 A. 2d 845 (1969). *See also Lukas v. Bar Ass'n of Montgomery County,* 35 Md. App. 442, 371 A. 2d 669 (1977). The Court, as the regulator of persons who practice law in this State, owes a duty to the

public to remove from practice during the appeal process those attorneys who have been convicted of felonies in a trial court. It is true that convictions may be overturned on appeal, but in the meantime, what happens to litigants who employ the services of an attorney whose conviction is pending on appeal? Does the lawyer quickly settle their case for far less than it is worth in order to make as much money as possible before the appellate decision is handed down? Does he "farm out" the case to other lawyers for a "brokerage fee" irrespective of the appellate decision? Does he, having been convicted of a crime and fearing affirmance on appeal, shortcut the Canons of Ethics so as to line his own pockets? Perhaps the lawyer would do all of those things, some of them, or none, but he should not be afforded the opportunity.

The same inherent and fundamental judicial power to act in proceedings involving the discipline of members of the bar employed in *Maryland State Bar Ass'n v. Boone,* 255 Md. 420, 429-32, 258 A. 2d 438 (1969), and alluded to in *In re Diener and Broccalino,* 268 Md. 659, 685, 304 A. 2d 587 (1973), *cert. denied,* 415 U. S. 989 (1974), should have been utilized in *Reamer,* Rule BV16 notwithstanding.

Bound by the decision in *Reamer,* I reluctantly concur in the result reached by the majority.

*Orth, J., dissenting* :

I do not join the majority opinion in this proceeding because I believe that their conclusion flies directly in the teeth of reason, common sense and the record before us.

On 21 April 1978 Gerald Ney Klauber, an attorney at law, was found guilty by a jury in the United States District Court for the District of Maryland of seventeen felonious offenses proscribed by the laws of the United States. Sixteen of them concerned mail fraud, and the remaining offense was racketeering activity predicated upon mail fraud. *See* 18 U.S.C. § 1341, § 1961 (1) (B), § 1961 (5) and § 1962. Promptly thereafter, on 2 May 1978, the federal court ordered that he be suspended from the practice of law before it pursuant to its Local Rule 2A (C), and that he show cause why he should

not be disbarred. He answered and to date no further action has been taken thereon. On 22 June 1978 he was sentenced to five years imprisonment on each conviction, the terms of imprisonment to run concurrently. His appeal from the judgments is pending.

The Attorney Grievance Commission of Maryland was created with authority to supervise and administer the discipline and inactive status of attorneys entitled to practice in the courts of this State. Maryland Rule BV 2 a. Bar Counsel, appointed by the Commission, subject to approval of this Court, is the principal executive officer of the disciplinary system affecting attorneys. Rules BV 1 c and BV 4. Klauber had been admitted by this Court on 5 June 1959 to practice law in all the courts of this State. On 28 June 1978 Bar Counsel instituted proceedings to suspend Klauber from the practice of law pursuant to Rule BV 16 a as then in effect:

> "If an attorney is convicted in any judicial tribunal of a crime involving moral turpitude, whether the conviction results from a plea of guilty or of nolo contendere or from a verdict after trial, and regardless of the pendency of an appeal or any other post-conviction proceeding, the Bar Counsel shall file charges with the Court of Appeals alleging the fact of the conviction and requesting that the attorney be suspended from the practice of law. A certified copy of the judgment of conviction shall be attached to the charges and shall be prima facie evidence of the fact that the attorney was convicted of the crime charged." [1]

Klauber answered our show cause order, Rule BV 16 b, claiming that "none of the offenses for which he was

---

1. As the majority point out, on 5 May 1978 this Court amended Maryland Rule BV 16, effective 1 July 1978, to permit suspension of an attorney upon conviction of certain crimes which include a conviction "in any federal court of a felony, unless the same crime also is a crime under Maryland law and is not a felony. . . ." The majority expressly "do not pass upon whether Klauber would be subject to suspension upon the timely filing of a petition under the revised Rule BV 16 since the matter is not before us." They give no indication as to what a "timely filing" of such a petition would be in the circumstances here.

convicted involved moral turpitude." [2] He requested a hearing so that he could "establish the lack of moral turpitude involved in any of the offenses in question." A hearing was duly held.

A majority of the Court deny the petition to suspend. They do so on the ground that the instruction to the jury "apparently did not limit a conviction to a finding of moral turpitude. . . ." They quote the particular instruction of the trial court which leads them to this conclusion and say: "It may follow from this instruction that the jury *could* have found Klauber guilty without finding an intent on his part to defraud." Noting that an appeal from the judgments was still pending, they state: "Hence we cannot say at this point in time, particularly before the Fourth Circuit speaks, that Klauber necessarily stands convicted of a crime involving moral turpitude." I do not agree.

The trial court's instructions to the jury were comprehensive, thorough and specific. The transcript of the instructions consists of some forty pages, about twenty-five of which dealt with the offenses set out in the indictment. The judge explained the indictment. He read the statute under which the sixteen mail fraud counts were brought, 18 U.S.C. § 1341, and discussed the offenses of aiding and abetting in a mail fraud under 18 U.S.C. § 2 which were also charged in the sixteen counts.[3]

---

2. Klauber also asserts in his answer that "[t]here was no evidence bearing on any of the counts in the Indictment which suggested or even remotely established [his] culpability in connection with these charges." He suggests: "In fact, what happened, was a petit jury running wild and convicting an attorney on mere suspicion and conjecture, notwithstanding the trial court's instructions, and more than likely because of the prevailing attitude towards attorneys which the type of proceeding herein, unfortunately perpetrates." The sufficiency of the evidence to sustain the convictions is not before us in this proceeding.

In the memorandum of law submitted in support of his answer, Klauber questions the constitutionality of Rule BV 16. That point was not raised in his answer.

3. The counts were 2 through 5 inclusive, 7 through 14 inclusive, and 21 through 24 inclusive. 18 U.S.C. § 1341 provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . . for the purpose of executing such scheme or artifice or attempting

Each of the sixteen counts alleged "(1) a scheme to defraud and (2) a specific mailing in furtherance of such a scheme." The judge referred to Count 1 of the indictment, which the jury was to consider but not return a verdict thereon because its allegations were incorporated by reference in the mail fraud counts. He pointed out that the first fourteen paragraphs of Count 1 stated the details of an alleged scheme, "wilfully and knowingly devised by [Klauber] to defraud [seven designated] insurance companies ... through the submission of false and fraudulent medical reports and bills on behalf of personal injury claimants who had been involved in automobile accidents." I summarize the essentials of the scheme as recounted by the judge to the jury from the allegations in the indictment. Klauber was an attorney who represented clients, some of whom were procured by runners employed and paid by Klauber, who claimed to have been injured in automobile and other accidents caused by the negligence of other persons. Klauber referred these clients to certain doctors to obtain false and fraudulent medical bills and reports which were used to secure monetary settlements from the insurance companies. Klauber, at his option, could pay and the doctors would accept substantially reduced payments in satisfaction of the medical bills, an option not disclosed to the insurance companies. Without the knowledge or authorization of the clients, Klauber retained a portion of the settlement proceeds to which the clients were entitled. As a further part of the scheme to defraud, Klauber urged, or suggested, that his clients take time off from work which they would not otherwise have taken so as to increase the damages claimable. Among the false and fraudulent medical bills and reports so used to defraud were bills which had been inflated by the inclusion of charges for visits which had not been made, and for medical treatment which had not been

---

so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years or both."

rendered and reports which falsified and exaggerated the injuries purportedly sustained. Those essentials of the scheme were a part of each of the sixteen mail fraud counts. So, the judge said, "[Klauber] has been charged in these 16 mail fraud counts with participating in a scheme to defraud and with using the mails in furtherance of that scheme."

The judge designated three elements which were required to be proved to establish the offense charged in each of the sixteen counts. The second and third elements related to the use of the mails. The first was:

> "The act or acts of the defendant of having devised, or of having intended to devise, a scheme or artifice *with the specific intent to defraud,* or to attempt to defraud, certain named insurance companies out of money or property by means of false or fraudulent representations, as to bills or medical reports submitted by defendant to these companies for the settlement of his clients' personal injury claims, as charged. . . ." (emphasis added).

After discussing the meaning of "scheme," "artifice," and a "false or fraudulent representation" the judge said:

> "In proving that [Klauber] devised or intended to devise a scheme or artifice to defraud, as charged, the Government is not required to prove beyond a reasonable doubt every representation alleged in the indictment; it is only required to prove a sufficient number of such representations to show beyond a reasonable doubt that the defendant devised or intended to devise a scheme or artifice to defraud one or more of the insurance companies named in the indictment in one or more of the ways alleged in the indictment."

He explained "intent to defraud":

> "To act with 'intent to defraud' means to act knowingly and willfully and with the specific intent to deceive, ordinarily for the purpose of either

causing some financial loss to another, or bringing about some financial gain to oneself or others."

He discussed the proving of intent to defraud:

"Fraudulent intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and done or omitted by a defendant, and all other facts and circumstances in evidence which indicate his state of mind. It is ordinarily reasonable to draw the inference that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

"Fraudulent intent is not presumed or assumed; it is personal and not imputed; and one is chargeable with his own personal intent and not with that of some other person."

It was at this point that the judge gave the instruction quoted by the majority and relied upon by them in concluding that the charge did not limit a conviction to a finding of moral turpitude. The relied upon instruction went no further than to enable the jury to consider evidence that Klauber paid runners to secure his employment by a client as some "evidence of the intent with which [Klauber] acted ..." in carrying out the scheme to defraud so carefully outlined in the earlier part of the charge. It went to his state of mind but clearly did not permit the jury to return a verdict of guilty on a mere finding that Klauber paid runners. Paying runners may have been in furtherance of the scheme to defraud but the judge in nowise suggested that such evidence was exclusive evidence on which to convict.

The charge must be considered as a whole. *Atran v. Furness,* 251 Md. 216, 224, 246 A. 2d 767 (1968), citing *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 185 A. 2d 715 (1962). It should not be fragmented and brief comments be excised therefrom, or words, phrases or sentences selected

out, divorced from the balance of the instructions, and relied upon out of context. *Dean v. Redmiles,* 280 Md. 137, 162-163, 374 A. 2d 329 (1977), quoting *Schwier v. Gray,* 277 Md. 631, 637, 357 A. 2d 100 (1976), which cited *Clayborne v. Mueller,* 266 Md. 30, 40-41, 291 A. 2d 443 (1972) and *Jones v. Federal Paper Bd. Co.,* 252 Md. 475, 484-485, 250 A. 2d 653 (1969). The necessity that the jury, in order to render a verdict of guilty, find that Klauber devised or aided and abetted in devising a scheme or artifice "with the specific intent to defraud" permeates the entire charge in plain and unequivocal terms. Further on, after the comments relied upon by the majority, the court put it flatly:

> "[T]he question here is . . . did the defendant, Gerald N. Klauber, intend to defraud?"

This intent on the part of Klauber to defraud was the keynote and the tenor of the instructions. There is simply no way in which the instructions of the trial judge can be reasonably construed as permitting the jury to return a verdict of guilty on the crimes charged without finding that Klauber devised, or aided and abetted in devising, a scheme or artifice to defraud. Patently, a scheme or artifice "to defraud" requires an "intent to defraud." An intent to defraud encompasses moral turpitude. *See Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 459-460, 374 A. 2d 354 (1977). In other words, from a review of the allegations of the indictment and the District Court's charge to the jury, and the jury's verdicts, the crimes of which Klauber was convicted plainly involved moral turpitude. *See Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 328-330, 379 A. 2d 171 (1977).[4] Thus, the suspension of Klauber would be within the ambit of the

---

4. In Attorney Grievance Comm'n v. Reamer, 281 Md. 323, 328, 379 A. 2d 171 (1977), as the majority point out, we carefully and expressly refrained from deciding "whether a conviction for mail fraud in any and all circumstances, will always involve moral turpitude." At the least, implicit in the majority opinion is that a conviction of mail fraud may not involve moral turpitude. This apparent conclusion is reached without discussion and with no cogent reasons being advanced. It is difficult for me to understand how the crime of mail fraud as set out in 18 U.S.C. § 1341, could be a crime not involving moral turpitude, depending as it does on a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

former provisions of Rule BV 16, the applicability of which is not questioned here. I would grant the petition of Bar Counsel and suspend Klauber from the practice of law in this State until our further order, Rule BV 16 c, to protect the public from his acts pending a determination of the propriety of his convictions. *Attorney Grievance Comm'n v. Andreson,* 279 Md. 250, 253-254, 367 A. 2d 1251 (1977).

As noted *supra,* the applicability of the former provisions of Rule BV 16 to Klauber is not questioned here, and the majority expressly do not now pass upon whether the new provisions of that Rule are applicable. Even if Klauber falls in a nether land so that neither the old nor the new Rule applies to him, action should be taken forthwith to suspend him. We said in *Pub. Serv. Comm'n v. Hahn Transp., Inc.,* 253 Md. 571, 583, 253 A. 2d 845 (1969) that the regulation of the practice of law and of its practitioners is, and essentially and appropriately should be, a function of the judicial branch of the government. If Rule BV 16, as formerly in effect or as revised, is not applicable to Klauber, I would invoke this inherent power with regard to him. The nature of the felonious acts of which he was convicted, as shown by the allegations of the indictment, the trial court's instructions and the jury's verdicts, cry in clear voice that he be suspended from the practice of law pending the determination of the convictions whether or not moral turpitude was involved. The conduct which the jury found beyond a reasonable doubt was engaged in by him makes a mockery of the trustworthiness, honesty and good faith required of those given the privilege to practice law. To permit him to practice in the face of his convictions stigmatizes an honorable profession.