626 F.2d 928

**UNITED STATES of America**

v.

**Earl T. JORDAN, a/k/a Charles Jordan, a/k/a Robert Grant, a/k/a Vernell Rice, a/k/a Billy Lee Rice, Appellant.**

**No. 79–1633.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1979.

Decided Feb. 14, 1980.

Vincent R. Alto, Washington, D. C. (appointed by this Court), for appellant.

Christopher A. Myers, Asst. U. S. Atty., with whom Carl S. Rauh,* U. S. Atty., John A. Terry and John W. Polk, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before McGOWAN and MacKINNON, Circuit Judges and PRATT,** United States District Judge for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

Appellant, Earl T. Jordan, was found guilty by a jury on all charges alleged in a fifty count indictment. The offenses were composed of (1) twenty-three counts of mail fraud (18 U.S.C. § 1341); (2) one count charging a false claim against the United States (18 U.S.C. § 287); and (3) twenty-six counts charging the fraudulent uttering of checks with forged endorsements (18 U.S.C. § 495). Jordan did not testify at trial and the charged offenses were clearly proven by very strong direct and circumstantial evidence. Sentences of twenty (20) months to five (5) years were imposed on each of the mail fraud counts and the false claim counts, and forty (40) months to ten (10) years on each of the fraudulent uttering counts. All sentences were adjudged to run concurrently.

The mail fraud statute was violated when Jordan caused United States Treasury checks in payment of false and fraudulent claims under the Ex-serviceman's Compensation Act to be sent through the mails. The false claim count involved the presenta-

* United States Attorney at the time the briefs were filed.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

tion to the United States Department of Labor of a false claim under the same Act. And, the fraudulent uttering offenses were proven by evidence that Jordan with intent to defraud the United States forged the endorsements on twenty-six checks which he received as part of the mail fraud scheme.

Appellant does not presently contend that there was insufficient evidence at trial to support the judgment of conviction. Rather, he claims that his substantial rights were prejudiced when the trial court denied his motion to strike as surplusage the allegation that the proceeds of the mail fraud scheme *"were approximately $110,000."* The motion was directed at the following paragraph (7) of the Indictment's introductory paragraphs describing the mail fraud scheme which was incorporated by reference in the first twenty-three counts, all of which related to the mail fraud:

> "(7) It was further part of the scheme and artifice to defraud and for the purpose of further executing the scheme and artifice that the defendant and others, known and unknown to the Grand Jury, knowingly endorsed and negotiated and received the proceeds from United States Treasury checks issued as a result of the scheme and artifice to defraud: *such proceeds were approximately $110,000."* (Emphasis added.)

Prior to the commencement of trial Appellant questioned the "$110,000" allegation on the ground that the Government's proof of the specific checks would only amount to between $4,000 and $5,000. (Tr. 5–6) At that time the court limited the Government to proof of the checks enumerated in the charging portion of the indictment, but refused to strike the $110,000 allegation. (Tr. 506) Actually, there were proceeds of the scheme that were not alleged in the mail fraud counts because the indictment alleged

11 counts of fraudulent uttering designated checks that were not included in the mail fraud counts. The Court similarly refused to strike the allegation at the close of all the testimony. (Tr. 272) Appellant admitted it was "surplusage." In passing we note that it is not an infrequent practice in mail fraud cases to allege the full scheme to allow for contingencies of proof, but many times the prosecution or the court reduces the number of counts and restricts the proof to sufficient representative counts to present the substance of the offense and to allow sufficient latitude to the court for the imposition of an adequate sentence.

■ During its deliberations the jury sent the following note to the court:

> "The indictment in count seven, charge one, mail fraud, cites approximately $110,000 as the proceeds involved in defendant's alleged scheme to defraud. This is the first time such a sum has appeared and the evidence does not account for this total. Is this pertinent for the jury to know in arriving at a decision? If so, what is the explanation for the $110,000?" (Tr. 304)

In response the court instructed the jury:
> The Government is not required to prove the details of a scheme; it is, however, required to prove beyond a reasonable doubt the following: that the defendant . . . willfully and knowingly devised a scheme or artifice to defraud . . . and, secondly, that the defendant used the United States Postal Service by mailing or by causing to be mailed some matter or thing for the purpose of executing the scheme to defraud. (Tr. 305.)

The instruction as given was correct in all respects.

■ On such record, Appellant contends that the trial judge abused his discretion in denying Appellant's motion to strike the alleged amount of proceeds.[1] For support,

---

1. Rule 7(d) of the F.R.Crim.P. makes the striking of surplusage permissive but not mandatory by the Court. In *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962), the Court stated that "[a] motion to strike surplusage from an indictment is addressed to the sound discretion of the District Court . . . ."

The standard under Rule 7(d) has been strictly construed against striking surplusage. *See United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975).

Appellant relies on *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). To ascertain whether a variance is prejudicial the Supreme Court ruled that:

> The true inquiry, . . . is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

*Id.* at 82, 55 S.Ct. at 630. In attempting to prove that his substantial rights had been affected, Appellant first maintains that the $110,000 allegation was so far in excess of the proof that it was inflammatory and tended to confuse the jury and taint its deliberations. *Berger,* however, is distinguishable since it involved a fatal variance where a single conspiracy was alleged in the charging portion of the indictment and the proof at trial showed the existence of two separate conspiracies. Here the questioned allegation was in the introductory paragraphs outlining the scheme rather than in the charging paragraphs of the mail fraud counts. In determining whether there has been a variance between pleading and proof it is the charging paragraphs that are to be examined. *United States v. Hathaway,* 534 F.2d 386, 397 (1st Cir.), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976).

The instant case is also distinguishable from *Berger* in that the full amount of proceeds as alleged was not an essential element of the statutory offense. The indictment alleged that Jordan devised a scheme to defraud and used the mails for the purpose of executing that scheme. The Government's evidence fully proved the essential elements of the offense and that

was all that *Berger* or the mail fraud cases require. *United States v. Talbott,* 590 F.2d 192, 195 (6th Cir. 1978) ("The elements of the offense of mail fraud under 18 U.S.C. (Supp. V) § 1341 are (1), a scheme to defraud, and (2) a mailing for the purpose of executing the same."); *United States v. Outpost Development Co.,* 552 F.2d 868, 871 (9th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 503, 54 L.Ed.2d 450 (1977); *Linden v. United States,* 254 F.2d 560, 567 (4th Cir. 1958). The amount of money realized as a result of the scheme is not an essential element of mail fraud. It was not even necessary to prove that the scheme succeeded. *United States v. Pollack,* 175 U.S.App.D.C. 227, 234, 534 F.2d 964, 971 (D.C.Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976).[2] The language of an indictment that goes beyond alleging the elements of the statute is mere surplusage which need not be proven. *United States v. Greene,* 497 F.2d 1068, 1086 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *see Ford v. United States,* 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1927) (a judge may hold that a "useless averment is innocuous and may be ignored."); *United States v. Archer,* 455 F.2d 193, 194 (10th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 135, 34 L.Ed.2d 100 (1972); *Milentz v. United States,* 446 F.2d 111, 114 (8th Cir. 1971); *Gawne v. United States,* 409 F.2d 1399, 1403 (9th Cir. 1969), *cert. denied,* 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970). Thus, the Government proved all of the necessary elements of mail fraud and was not required to prove that the proceeds actually amounted to $110,000. Failure of such proof did not affect any substantial right of the defendant, and Appellant has indicated no way in which he was inhibited from presenting his defense.

■ The Court's reply to the inquiry by the jury placed the allegation in its proper perspective for the jury and the Court did not abuse its discretion in refusing to strike

---

**2.** In *Pollack* this Court stated that:

[t]he fraud statutes speak alternatively of devising or intending to devise a scheme to defraud and do not require that the deception

bear fruit for the wrongdoer or cause injury to the intended victim as a prerequisite to successful prosecution.

534 F.2d at 971.

the allegation. *United States v. Kemper,* 503 F.2d 327, 329–30 (6th Cir. 1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975); *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir. 1971). In view of the overwhelming direct and circumstantial evidence of all the offenses there was no likelihood that the jury would acquit the accused on any of the charges. The Government's proof consisted of finger prints, handwriting evidence and testimony, access to the claim forms, accomplice testimony from two witnesses, direct linkage to street addresses to which fraudulently obtained checks were mailed, linkage of such checks to Jordan's bank account, actual photographs of Jordan taken by a check cashing machine when Jordan cashed such checks, and eye witness testimony positively identifying Jordan as the person who cashed some of the checks.

■ Appellant's second and principal argument is that he may eventually be prejudiced in seeking parole because of the $110,000 allegation. His brief reasons as follows:

On June 4, 1979, the United States Parole Commission promulgated regulations which adopted new guidelines for parole release consideration. 28 C.F.R. § 2.20 (June 4, 1979); 44 Fed.Reg. 26540–26552 (May 4, 1979). These guidelines indicate the customary range of time to be served before release for various combinations of offense severity and offender parole prognosis characteristics. The prisoner is evaluated on his behavioral history and given a "salient factor score" which represents his parole prognosis. A score of from 0–3 would give him a "poor" rating, while the highest score of from 9–11 would rate his parole prognosis as "very good". The prisoner's salient factor score is then matched to the Commission's rating of the severity of his offense. As it applies to the instant case, a property offense involving fraud where the value

is between $2,000 and $19,999 is considered a "moderate" severity offense and the customary range of time to be served, depending upon the salient factor score, will be from ten to thirty-two months. However, the same offense where the value is between $100,000 to $500,000 is considered a "very high" severity offense and would call for from twenty-four to seventy-two months imprisonment, depending on the salient factor score. (Appellant's Br. pp. 7–8).

Appellant is thus apprehensive that the presence of the $110,000 allegation in the indictment might be considered by the Parole Commission as having been proven since he was convicted on those twenty-three counts. So that such prejudice will not result we point out that the evidence at trial did *not* prove that the proceeds realized by Jordan from the mail fraud scheme amounted to $110,000. The Government's proof did not extend beyond the sums alleged in the individual checks that were described in the substantive counts. As we understand the Parole Commission regulation, this proof would classify his offense only as one of "moderate severity". In so stating we do not express any opinion on the regulation or its application to appellant.

If Jordan is prejudiced in any parole proceedings, he may raise his challenge at that time. We have no indication that the Commission will depart from the offense as proven, and rely on the allegation of an amount specified in the indictment which was not fully proven.[3] In criminal trials it happens so frequently that the proof at trial falls somewhat short of amounts alleged that it would seem the Parole Commission would be aware of this circumstance and in each case would determine what was actually proved at trial. In *United States v. Rubin,* 598 F.2d 278, 282 (5th Cir. 1979) the Fifth Circuit stated that in

3. Appellant maintains that thirty-five checks were received in evidence to support counts one through twenty-three, the mail fraud counts. The total value of these checks was $4,750.

The 34 checks listed in the 49 counts of the indictment totalled $4,613 and presumably there was one check for $137 introduced with respect to the false claim count—Count 24.

determining the severity ratio, the Commission should not consider counts that have been reversed on review for reasons going to the individual's guilt or innocence. Obviously, the same should be true of counts where sums alleged are not fully proven.

Another factor which militates against the Appellant's argument is a regulation that was promulgated by the Department of Justice on the same day as the regulation quoted above upon which appellant relies. The new regulation, 28 C.F.R. § 2.19(c), allows the prisoner to dispute the accuracy of the information presented to the Commission and provides for resolution of such disputes by a preponderance of the evidence test. The regulation provides:

> § 2.19 Information considered . . .
> (c) The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances provided the prisoner is apprised of the information and afforded an opportunity to respond. If the Prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and · probability. However, the Commission shall not consider in any determination, charges upon which a prisoner was found not guilty after trial unless reliable information is presented that was not introduced into evidence at such trial (e. g., a subsequent admission or other clear indication of guilt).

44 Fed.Reg. 26550 (May 4, 1979).

## CONCLUSION

Since we have stated that the amount of money which was proven by the Government to have been involved in Jordan's offenses fell far short of the $110,000, and have also noted that the Department of Justice Regulation permits prisoners to dispute inaccurate information and to prove

"mitigating circumstances" in Parole Commission proceedings, we conclude that Jordan has not shown any prejudice or any likelihood of prejudice. This opinion will support an assertion of the correct sums that were proven. Therefore, we affirm the judgment of conviction on all counts.

*Judgment accordingly.*