## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. GERALD NEY KLAUBER

[Misc. (BV) No. 5, September Term, 1980.]

*Decided February 10, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, COLE and DAVIDSON, JJ., and RICHARD P. GILBERT, Chief Judge of the Court of Special Appeals, specially assigned. ELDRIDGE, J., participated in the hearing on this matter but took no part in the consideration or decision of this case.

*Michael E. Marr* for respondent.

*Walter D. Murphy, Jr., Assistant Bar Counsel,* for petitioner.

SMITH, J., delivered the opinion of the Court.

This is the third time we have considered issues growing out of the mail fraud conviction of Gerald Ney Klauber, a member of the Maryland bar. This time we shall disbar.

Bar Counsel, acting on behalf of the Attorney Grievance Commission, filed a petition with us seeking disciplinary

action against Klauber because he had been convicted of violating 18 U.S.C. § 1341 (1970) (mail fraud) and 18 U.S.C. § 1962 (1970) (racketeering). It was alleged that Klauber had violated Disciplinary Rules 1-102; 2-103 (B), (C), (D), and (F); 3-103; 5-107 (A); 7-101 (A) (3); 7-102 (A) (2-8, inclusive); and 9-102.

Pursuant to Maryland Rule BV9 we designated the Honorable David Ross, an associate judge of the Eighth Judicial Circuit of Maryland, to hear the charges. He found as a fact that Klauber "was found guilty by a jury in the United States District Court for the District of Maryland of 16 counts of mail fraud . . . and one count of racketeering . . . on April 21, 1978 and was sentenced to concurrent terms of 5 years imprisonment as to each count on June 21, 1978." His conclusions of law were:

> 1. The federal crime of mail fraud (18 U.S.C. § 1341) is a crime involving moral turpitude.
>
> 2. A lawyer who is guilty of the federal crime of mail fraud (18 U.S.C. § 1341) has violated the following disciplinary rules:
>
> > DR 1-102(A)(3)
> > DR 1-102(A)(4)
> > DR 1-102(A)(5)

These disciplinary rules specify that a lawyer shall not engage in illegal conduct involving moral turpitude; conduct involving dishonesty, fraud, deceit, or misrepresentation; or conduct that is prejudicial to the administration of justice.

In *United States v. Klauber,* 611 F.2d 512 (4th Cir. 1979), *cert. denied,* 446 U.S. 908, 100 S. Ct. 1835 (1980), Judge Murnaghan summarized for the court the factual basis for the conviction:

> The scheme or artifice to defraud and the pattern of racketeering activity asserted against Klauber grew out of his conduct as a partner in the law firm of Fine and Klauber, P.A. The evidence at trial permitted a jury conclusion that Klauber was engaged in a practice in which, with respect to per-

sonal injury cases in which he or his firm represented plaintiffs, Klauber sought inflated statements from doctors in which charges were set forth for visits by the plaintiffs which had not actually occurred. Subsequent to settlements with insurance companies based on such inflated statements from doctors, Klauber reduced the amounts actually remitted to the doctors and sometimes diverted amounts received in settlement with respect to one plaintiff's case to a doctor not involved in the case but retained with respect to some other plaintiff. [*Id.* at 513.]

In his effort to avoid disciplinary action Klauber has filed a number of exceptions to the findings of fact and conclusions of law of the trial judge. They are all bound up, however, in his contention that the trial judge erred in ruling that the offenses of which Klauber was convicted "*per se* involve moral turpitude" and thus that it is improper to discipline Klauber without a development of the underlying issues. He says, "It is obvious that this Court's refusal to suspend Respondent for conviction of a crime involving moral turpitude means *ipso facto* that mail fraud need not, in every case, involve moral turpitude," referring to *Attorney Griev. Comm'n v. Klauber,* 283 Md. 597, 391 A.2d 849 (1978) (*Klauber* I). Such is not the case. We shall here attempt to dispel any false impressions which may have arisen as a result of that opinion, that in *Attorney Grievance Comm'n v. Klauber,* 284 Md. 306, 396 A.2d 253 (1979) (*Klauber* II), and the one in *Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 379 A.2d 171 (1977).

We shall first examine the federal statute and that which has been written relative to it. The statute provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use

any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. [18 U.S.C. § 1341 (1970).]

No significant change has been made in the statute since 1909.

The most recent opinion of the Supreme Court on this statute is *Pereira v. United States,* 347 U.S. 1, 74 S. Ct. 358, 98 L. Ed. 435 (1954), in which Chief Justice Warren said for the Court:

The elements of the offense of mail fraud under 18 U.S.C. (Supp. V) § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme. It is not necessary that the scheme contemplate the use of the mails as an essential element. *United States v. Young,* 232 U.S. 155. [*Id.* at 8.]

In reviewing convictions under this statute the federal appellate courts consistently have said that to convict under this statute these elements must be established. They usually cite *Pereira* to this effect. See, e.g., *United States v. Bohonus,* 628 F.2d 1167, 1171 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S. Ct. 3026 (1980); *United States v. Wrehe,* 628 F.2d 1079, 1082 (8th Cir. 1980); *United States v. Jordan,* 626 F.2d 928, 930 (D.C. Cir. 1980); *United States v. Rodgers,* 624 F.2d 1303, 1306 (5th Cir. 1980); *United States v. Freeman,*

619 F.2d 1112, 1117 (5th Cir. 1980); *United States v. Brien,* 617 F.2d 299, 307 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S. Ct. 1854 (1980); *DeMier v. United States,* 616 F.2d 366, 369 (8th Cir. 1980); *United States v. Kent,* 608 F.2d 542, 545 (5th Cir. 1979), *cert. denied,* 446 U.S. 936 (1980); *United States v. Corbin,* 590 F.2d 398, 402 (1st Cir. 1979); *United States v. McDonald,* 576 F.2d 1350, 1359 (9th Cir.), *cert. denied,* 439 U.S. 830 (1978); *United States v. Pearlstein,* 576 F.2d 531, 537 (3d Cir. 1978); *United States v. Foshee,* 569 F.2d 401, 403 (5th Cir. 1978), *cert. denied,* 444 U.S. 1082 (1979); *United States v. McNeive,* 536 F.2d 1245, 1247 (8th Cir. 1976); *United States v. Bush,* 522 F.2d 641, 648 (7th Cir. 1975), *cert. denied,* 424 U.S. 977 (1976); *United States v. Bryza,* 522 F.2d 414, 421 (7th Cir. 1975), *cert. denied,* 426 U.S. 912 (1976); *United States v. Payne,* 474 F.2d 603, 604 (9th Cir. 1973); and *United States v. Bessesen,* 445 F.2d 463, 468-69 (7th Cir.), *cert. denied,* 404 U.S. 984 (1971). In *Jordan* the court stated:

> During its deliberations the jury sent the following note to the court:
>
> "The indictment in count seven, charge one, mail fraud, cites approximately $110,000 as the proceeds involved in defendant's alleged scheme to defraud. This is the first time such a sum has appeared and the evidence does not account for this total. Is this pertinent for the jury to know in arriving at a decision? If so, what is the explanation for the $110,000?"
>
> In response the court instructed the jury:
>
> The Government is not required to prove the details of a scheme: it is, however, required to prove beyond a reasonable doubt the following: that the defendant . . . willfully and knowingly devised a scheme or artifice to defraud . . . and, secondly, that the defendant used the United States Postal Service by mailing or by causing to be mailed some matter or thing for the purpose of executing the scheme to defraud.

The instruction as given was correct in all respects. [*Id.* 626 F.2d at 930.]

In *United States v. Grande,* 620 F.2d 1026 (4th Cir.), *cert. denied,* U.S., 101 S. Ct. 98 (1980), Judge Winter said for the court:

> The thrust of § 1341 is upon misuse of the mails to defraud, not the regulation of state and municipal affairs. *United States v. States,* 488 F.2d 761, 767 (8 Cir. 1973), *cert. denied,* 417 U.S. 909, 94 S. Ct. 2605, 41 L. Ed. 2d 212, *cert. denied,* 417 U.S. 950, 94 S. Ct. 3078, 41 L. Ed. 2d 671 (1974). Defendants' use of the mails, principally to give notice to proceed on contracts for demolition, to send checks in full or partial payment under fraudulently obtained demolition contracts and to mail a bill from one of the contractors for work performed under one such contract are, in our view, sufficiently related to the scheme to defraud to bring defendants within the reach of § 1341. *Pereira v. United States,* 347 U.S. 1, 8, 74 S. Ct. 358, 362, 98 L. Ed. 435 (1954); *United States v. Mandel, supra,* at 1360 n. 9; *United States v. Brewer,* 528 F.2d 492, 494 (4. Cir. 1975). [*Id.* at 1029-30.]

In *Freeman* the court observed, "The indictment need not specifically charge, but the government must prove, 'a specific intent to commit fraud,' *United States v. Kent,* 608 F.2d at 545 n. 3 . . ., *id.* at 546." *Id.* at 619 F.2d at 1117.

Law review articles upon the subject include Comment: *Federal Prosecution of Elected State Officials for Mail Fraud: Creative Prosecution or an Affront to Federalism?,* 28 Am. U. L. Rev. 63 (1978); Rakoff, *The Federal Mail Fraud Statute (Part I),* 18 Duq. L. Rev. 771 (1980); Comment: *The Intangible-Rights Doctrine and Political-Corruption Prosecutions Under the Federal Mail Fraud Statute,* 47 U. of Chi. L. Rev. 562 (1980); Comment, *Survey of the Law of Mail Fraud,* 1975 U. of Ill. L. F. 237 (1975); and Comment: *A Survey of the Mail Fraud Act,* 8 Mem. St. U. L. Rev. 673

(1978). The comment in the University of Illinois Law Forum and the article by Mr. Rakoff, former Chief of Business Frauds Prosecutions of the United States Attorney's Office, for the Southern District of New York, contain comprehensive background information relative to the development of the mail fraud statute and the court decisions thereunder. Although the American University and University of Chicago articles are somewhat critical of use of the statute for some of the more recent prosecutions, no article disputes the fact that fraud is one of the elements of the crime which must be proved in order to obtain a conviction. Mr. Rakoff states, "The truth . . . is that at least since the 1909 amendment, the sole genuine purpose of the mail fraud statute has been to prosecute fraud and the mailing has served primarily as a basis for invoking federal jurisdiction." *Id.* at 819.

Under Rule BV16 as it existed prior to July 1, 1978, Bar Counsel might petition us to suspend an attorney who was convicted of a crime involving moral turpitude. A petition for such a suspension was before us in *Reamer,* 281 Md. 323. He, too, had been convicted of violation of 18 U.S.C. § 1341 (1970). Chief Judge Murphy said for the Court relative to Reamer's contentions:

> Reamer suggests that in recent years the mail fraud statute has been broadened in scope by decisions of the federal courts and, as a result, the standards for establishing fraudulent intent have been so relaxed that the offense can no longer be considered a crime which, as a matter of course, always involves moral turpitude. In this connection, Reamer argues that the mere fact that he was convicted of mail fraud does not mean that he perpetrated a fraud or possessed a fraudulent or dishonest intent. He claims that a conviction under the mail fraud statute is now permissible in a case similar to his own where, after the attorney settles the claim with the insurance company, he prevails upon the physician, in the best interests of his client, to reduce his fee because the overall settlement

was not as advantageous as had been anticipated. [*Id.* 281 Md. at 328.]

He then went on to say for the Court:

We need not decide in this case whether a conviction for mail fraud, in any and all circumstances, will always involve moral turpitude. It is enough that we determine in this case, from a review of the allegations of the indictment and the District Court's charge to the jury, and the jury's verdict, that the crimes of which Reamer was convicted plainly involved moral turpitude. [*Id.* at 328.]

*Klauber* I was decided on October 10, 1978. This was prior to the decision of the Fourth Circuit on December 22, 1978, in *United States v. Reamer,* 589 F.2d 769 (4th Cir. 1978). In *Klauber* I, after quoting from our *Reamer,* we set forth a part of the instruction of the trial judge in Klauber's case. We said that it "apparently did not limit a conviction to a finding of moral turpitude as in *Reamer." Id.* 283 Md. at 598. We then said:

It may follow from this instruction that the jury *could* have found Klauber guilty without finding an intent on his part to defraud. His appeal is still pending. Hence we cannot say at this point in time, particularly before the Fourth Circuit speaks, that Klauber necessarily stands convicted of a crime involving moral turpitude.

It must be borne in mind that Rule BV16 does not make suspension mandatory, but makes it discretionary in this Court pending resolution of an appeal. In such a proceeding we do not have a full record before us. There has been no testimony adduced under Rule BV10, and hence no finding of fact under Rule BV11, as to whether moral turpitude was involved. Since suspension under Rule BV16, as it was then worded, could occur only upon conviction of a crime involving moral turpitude and, under the same rule, we were dealing with

suspension as a *preliminary* matter, without a full record, we held as we did in *Reamer* because our *preliminary* determination awaited *final* resolution of the moral turpitude issue upon appellate review of the conviction. It was our intention in *Reamer* under the rule as it then existed to make plain that we would not — and should not — suspend unless it was absolutely clear that the crime involved moral turpitude. In *Reamer* we came to recognize the difficulties inherent in this rule involving moral turpitude. It was for that reason that on May 5, 1978, effective July 1, 1978, we amended Rule BV16 to permit suspension of an attorney upon conviction of certain crimes which include a conviction "in any federal court of a felony, unless the same crime also is a crime under Maryland law and is not a felony . . . ." [*Id.* 283 Md. at 599-600 (emphasis in original).] [1]

In the Fourth Circuit's *Reamer,* decided after *Klauber,* the court responded to the contention that had been made to us in our *Reamer.* It said:

He objects primarily to the district court's instructions to the jury that if it found from the evidence that defendant (i) had attempted to suppress evidence or (ii) had knowingly violated the Maryland barratry statute or the professional code of ethics incident to the submission of false medical reports, then it could consider such findings as probative of defendant's criminal intent.

\* \* \*

We think there was ample evidence to support the court's instruction, and it was properly given.

---

1. Attorney Grievance Comm'n v. Klauber, 284 Md. 306, 396 A.2d 253 (1979), *Klauber* II, sheds no light on this controversy. There the Attorney Grievance Commission sought to have Klauber suspended under the revised Rule BV16 which permitted suspension of an attorney upon conviction "in any federal court of a felony, unless the same crime also is a

The law is well established that, in a criminal case, evidence of a defendant's attempt to influence a witness to testify regardless of the truth is admissible against him on the issue of criminal intent. *See Wilson v. United States,* 162 U.S. 613, 620-21, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); *United States v. Jamar,* 561 F.2d 1103, 1106-07 (4th Cir. 1977). Therefore, we think the court properly instructed that, if the jury found that the defendant attempted to suppress evidence, it could consider such evidence against him on the issue of consciousness of guilt. *See Allen v. United States,* 164 U.S. 492, 498-500, 17 S.Ct. 154, 41 L.Ed. 528 (1896); 1 Devitt and Blackmar, *Federal Jury Practice and Instructions,* 3rd Ed. § 15.09.

Also, on the issue of criminal intent, the court instructed that state law and the code of professional conduct prohibit the solicitation of clients by attorneys, and the standards for violation of the professional code were read to the jury. The court concluded its charge with the admonition that defendant was not on trial for any conduct not alleged in the indictment. We think this latter instruction was supported by the evidence and was properly given. *See U.S. v. Keane,* 522 F.2d 534, 553-57 (7th Cir. 1975), *cert. denied,* 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976). [*Id.* 589 F.2d at 770-71.]

When Klauber's case reached the Fourth Circuit he made no challenge to the instruction concerning which we had some doubt in *Klauber* I by reason of the representations then made to us. As his attorney put it at argument before us in this case, they deemed it useless to attack the instruc-

---

crime under Maryland law and is not a felony . . . ." We held that the revised rule might not be used to suspend Klauber since it did not become effective until July 1, 1978, after Klauber's conviction, and the order adopting the rule did not make it applicable to a judgment entered prior to the effective date of the rule.

tion after the same attorney had been unsuccessful on that issue in the Fourth Circuit's *Reamer.*

In *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 374 A.2d 354 (1977), we considered the meaning of the term "moral turpitude" in the context of an attorney disciplinary action. Judge Levine there said for the Court:

> The term "moral turpitude" has been defined generally as importing "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Braverman v. Bar Assn. of Balto.,* 209 Md. 328, 344, 121 A.2d 473, *cert. denied,* 352 U.S. 830 (1956). When applied to the context in which we deal with it here, the term connotes a fraudulent, *Iowa State Bar Association v. Kraschel,* 260 Iowa 187, 148 N.W.2d 621, 627 (1967), or dishonest, *Committee of Legal Ethics v. Scherr,* 149 W. Va. 721, 143 S.E.2d 141, 147 (1965), intent. As Justice Traynor said for the California Supreme Court in *In re Hallinan,* 43 Cal.2d 243, 272 P.2d 768, 771 (1954), *appeal after remand,* 48 Cal.2d 52, 307 P.2d 1 (1957):
>
> > "Although the problem of defining moral turpitude is not without difficulty (citations omitted), it is settled that whatever else it may mean, it includes *fraud* and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. (Citations omitted). It is also settled that the related group of offenses involving *intentional dishonesty* for purposes of personal gain are crimes involving moral turpitude. . . ." (Citations omitted; emphasis added).
>
> [*Id.* at 459-60.]

Any doubts we might have had as to the continued viability of the concept that a violation of § 1341 is a crime

involving moral turpitude have been dispelled by the Fourth
Circuit's *Reamer* and *Klauber* and the continued statements
by each United States Court of Appeals that fraud is an
essential element which must be proved in order for there to
be a conviction under this statute. Hence, we have no
hesitancy in saying once again, as we did in *Maryland St.
Bar Ass'n v. Kerr*, 272 Md. 687, 690, 326 A.2d 180 (1974),
mail fraud is "a crime plainly involving moral turpitude
. . . ." Moreover, the summary by Judge Murnaghan for the
Fourth Circuit in its *Klauber* makes plain that fraud was
involved in this case.

Rule BV10 e 1 states in pertinent part:

> In a hearing of charges pursuant to this Rule, a
> final judgment by a judicial tribunal in another pro-
> ceeding convicting an attorney of a crime shall be
> conclusive proof of the guilt of the attorney of that
> crime.

In *Maryland St. Bar Ass'n v. Rosenberg*, 273 Md. 351,
354-55, 329 A.2d 106 (1974), Chief Judge Murphy said for
the Court that "other states provide, as we do, by rule, stat-
ute, or case law, that a conviction of an attorney is conclusive
proof of guilt," citing a number of cases, and that "[t]he
constitutionality of these procedures has not been seriously
questioned." Judge Digges referred for the Court to the very
similar predecessor rule in *Bar Ass'n of Balto. City v. Siegel*,
275 Md. 521, 340 A.2d 710 (1975):

> Based on this rule and based on the cases which
> have applied it, *see Maryland St. Bar Ass'n v.
> Rosenberg*, 273 Md. 351, 329 A.2d 106 (1974);
> *Maryland St. Bar Ass'n v. Kerr*, 272 Md. 687, 326
> A.2d 180 (1974); *Maryland St. Bar Ass'n v. Agnew,
> supra; see also* concurring opinion in *In re
> Braverman*, 271 Md. 196, 212, 316 A.2d 246 (1974),
> we must conclude, regardless of what the
> respondent suggests, that the final judgment of the
> United States District Court for the District of
> Maryland, entered after Mr. Siegel's nolo

contendere plea, is conclusive proof of his guilt of the crime charged. [*Id.* at 528.]

Accordingly, under Rule BV10 e 1 and our prior cases Klauber may not now attack the factual underpinnings of his conviction. It becomes entirely proper to discipline him without a development of the underlying issues. Thus, we have before us for disposition the case of a lawyer who stands convicted of fraud, a crime involving moral turpitude.

We have repeatedly and consistently held that conduct involving moral turpitude will result in disbarment in the absence of compelling circumstances justifying a lesser sanction. See, e.g., *Attorney Griev. Comm'n v. Barnes,* 286 Md. 474, 481, 408 A.2d 719 (1979); *Bar Ass'n of Balto. City v. Siegel, supra,* 275 Md. at 529; *Maryland St. Bar Ass'n v. Kerr, supra,* 272 Md. at 690; *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 553, 318 A.2d 811 (1974), and cases there cited. No compelling circumstances justifying a lesser sanction have been presented here. Thus, it follows that the sanction to be imposed is disbarment.

> *It is so ordered; respondent shall pay all costs as taxed by the clerk of this Court including costs of all transcripts pursuant to Maryland Rule BV15 c for which sum judgment is entered in favor of the Attorney Grievance Commission against Gerald Ney Klauber.*